## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**GREGORY CRUM**,

      **Movant,**

**v.**                              **Case No. 2:19-cv-00817**
                                  **Criminal Case No. 2:16-cr-00133-01**

**UNITED STATES OF AMERICA**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 346 ).[1] The United States has filed a Response, asking the Court to deny the Motion, (ECF No. 355), and Movant has replied. (ECF No. 366). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing. For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; **DISMISS** this civil action,

---

[1] The citations in this Proposed Findings & Recommendations are taken from Movant's criminal case: *United States v. Crum*, Case No. 2:16-cr-00133-01 (S.D.W. Va. Jul. 20, 2018).

with prejudice; and **REMOVE** this matter from the docket of the Court.

## I.     Factual and Procedural Background

On July 20, 2016, Movant Gregory Crum ("Crum") was indicted by a federal grand jury sitting in the Southern District of West Virginia on one count of conspiracy to distribute 500 grams or more of methamphetamine. (ECF No. 1). Crum was arrested in the Central District of California and was transported to West Virginia to answer the charge. Attorney Thomas J. Gillooly was appointed to represent Crum upon his in arrival in West Virginia. Gillooly accepted the appointment despite having a busy case load, because he was one of only two local lawyers on the CJA-approved list of defense counsel, who did not have a conflict, or was not otherwise unavailable. (ECF No. 65).

On December 20, 2016, Gillooly filed a motion for leave to withdraw as counsel for medical reasons. (ECF No. 174). After conducting a hearing on the motion, at which Crum agreed to Gillooly's withdrawal, the United States District Court for the Southern District of West Virginia (the "Sentencing Court") granted the motion to withdraw and substituted Carl E. Hostler as counsel for Crum. (ECF  No. 186). On January 28, 2017, Hostler moved for a continuance of sixty days to give him time to further investigate Crum's competency. (ECF No. 195). That motion was granted, as was a subsequent motion, ultimately continuing Crum's trial date to May 23, 2017. (ECF Nos. 197, 218).

During the continuance, on March 3, 2017, Crum sent a letter to the Sentencing Court, enclosing a *pro se* motion to dismiss counsel and provide new legal representation. (ECF No. 346 at 14-19). In the motion, Crum asked for Hostler to be replaced, because he did not have Crum's best interests in mind and was not "a good fit" for Crum. (*Id*. at 15). In a supporting statement, Crum provided more detail, indicating that he wanted Hostler removed for the following reasons: (1) Hostler had failed to

2

provide Crum with certain documents that he wanted, including plea agreements reached by other individuals in the case, transcripts, and photographs of physical evidence; (2) Hostler was slow to inform Crum about continuances and other relevant dates in the case; (3) Hostler failed to get Crum access to the law library at his place of detention, and was slow to inform Crum about same; (4) Hostler had not updated Crum about the status of a joint defense agreement with co-defendant Diana Gamboa, who was also Crum's fiancée; (5) Hostler did not appear to understand sentencing issues and tried to persuade Crum to cooperate with the Government; and (6) Hostler did not seem interested in helping Crum make the best decisions in his case. (ECF No. 346 at 17-19). Crum stated that he had "no remaining confidence" in Hostler to represent him at trial, or during the sentencing process. (*Id.* at 19). According to Crum, rather than filing the motion and addressing it, the Sentencing Court simply forwarded a copy of Crum's letter and motion to Hostler. (ECF No. 366 at 8).

On  April 14, 2017, Hostler filed a Motion on behalf of Crum to schedule a guilty plea hearing. (ECF No. 233). The Sentencing Court granted the motion and scheduled the hearing on May 2, 2017. (ECF No. 239). On May 2, Crum appeared at the hearing, in person and with Hostler. (ECF No. 284). Crum testified that he was 42 years old, completed three years of college, and could read and write well. (*Id.* at 5). Crum understood the charge against him and what the United States would have to prove if he proceeded to trial on the charge. (Id. at 12-14). Crum acknowledged that he had discussed the charge with Hostler, told Hostler all of the facts, and had received counsel and advice from Hostler. (*Id.* at 14). Crum confirmed that he and Hostler had discussed the United States Sentencing Guidelines ("USSG"), that he understood how the guidelines were applied, and that he had no questions about them. (*Id.* at 29-31).

3

Crum then pleaded guilty to the charge against him. (ECF No. 284 at 33). In response to inquiries by the Sentencing Court, Crum agreed that he understood his constitutional right to counsel and stated that he was satisfied with his attorney. (*Id*. at 34-35). Crum agreed that Hostler had provided full and fair representation, confirming that Hostler had spent "a good deal of time" with him. (*Id*. at 41-42). At no point during the proceeding did Crum express any reservations about the professional performance of Hostler. Indeed, his responses during the Rule 11 plea colloquy expressed just the opposite. Crum displayed no reticence about entering a guilty plea and provided a detailed description of his involvement in the conspiracy, pausing only to confer privately with Hostler about questions posed by the Sentencing Court regarding other individuals who participated in the drug trafficking organization. (*Id*. at 45-49). Crum further acknowledged as accurate a summary of the Government's case as related by the Assistant United States Attorney, with the exception of a few details about drug shipments and payments and a statement about his reason for moving to California. (*Id*. at 49-55). Ultimately, Crum agreed that he was pleading guilty because he was in fact guilty of the crime charged. (*Id*. at 59). He denied being threatened or induced in any way to plead guilty. Consequently, the Court accepted Crum's guilty plea. (*Id*. at 62).

On August 3, 2017, Crum appeared with Hostler before the Sentencing Court for a sentencing hearing. (ECF No. 285). Hostler advised the Sentencing Court that he and Crum had reviewed the presentence investigation report ("PSR") together. (*Id*. at 6). Crum confirmed this fact, stating that Hostler had thoroughly reviewed and explained the PSR to him, and he understood the report. (*Id*. at 6-7). The Sentencing Court noted that Crum had extensive objections to the PSR; including, objections to sentence enhancements related to Crum's leadership and international source role in the

conspiracy, and the amount and quality of drug attributed to him. (ECF No. 285 at 28-29). Hostler argued strenuously on behalf of Crum in an effort to obtain a reduced offense level. However, after hearing from a witness and considering the arguments of counsel, the Sentencing Court overruled Crum's objections. (*Id.* at 29-81).

Hostler also argued at length regarding the excessiveness of the applicable USSG sentence range given Crum's psychological issues and drug addiction. He pointed out that murderers sentenced in the state court system received sentences that were less lengthy than sentences given on drug convictions in the federal system. (*Id.* at 99-100). Hostler's arguments were successful as the Sentencing Court imposed a sentence of 240-months' imprisonment, which was a significant downward variance from the USSG's sentence range of 324 to 405 months' imprisonment. (ECF No. 276 at 42; ECF No. 285 at 108).

Crum, with the assistance of Hostler, appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on August 8, 2017. (ECF No. 266). Crum challenged the Sentencing Court's findings regarding the quantity and purity of methamphetamine attributed to him. *See United States v. Crum,* No. 17-4634, 740 F. App'x 261 (4th Cir. Jul. 3, 2018). He also disputed the Sentencing Court's determination that he had a leadership role in the conspiracy and had distributed methamphetamine imported from Mexico. *Id.* On July 3, 2018, the Fourth Circuit rejected the appeal and affirmed the Sentencing Court's judgment. Crum petitioned the Supreme Court of the United States for a writ of certiorari, but the petition was denied on December 3, 2018. *Crum v. United States,* 139 S. Ct. 616, 2018 WL 5723185 (2018).

On November 18, 2019, the instant § 2255 motion was filed. (ECF No. 346). In the motion, Crum raises two grounds for relief. First, he claims that the Sentencing

Court erred by failing to docket and rule on his motion to substitute counsel and, thereby, violated Crum's Sixth Amendment right to the effective assistance of counsel. (ECF No. 346 at 4). According to Crum, the Sentencing Court's error was a "structural defect" requiring automatic reversal of his sentence. (ECF No. 350).

Second, Crum contends that Hostler provided ineffective assistance when he failed to seek an independent chemical analysis of the methamphetamine; failed to contest evidence disclosed late in the case, which overstated the quantity of alleged drug proceeds; misspoke at the sentencing hearing, agreeing to a weight and purity of drug that Crum claims were erroneous; and misrepresented material facts in the appellate brief, preventing the Fourth Circuit from properly considering the issues on their merits. (ECF No. 346 at 5). Crum asks that his sentence be vacated and that he been resentenced with the assistance of new counsel. (*Id.* at 12).

On January 21, 2020, pursuant to an order of the Court, Hostler filed an affidavit addressing Crum's allegations of ineffective assistance of counsel. (ECF No. 354). Hostler stated in response to Crum's criticism regarding the lack of an independent chemical analysis of the methamphetamine that, by the time he became involved in the case, state police laboratory reports had already been accepted as credible. In addition, while several pounds of methamphetamine were placed into evidence, most was "historic" or "ghost" drug not available for testing. Lastly, the sheer quantity of drug at issue was so great that its volume negated any benefit to be gained by an independent analysis. With respect to late-disclosed evidence, Hostler indicated that the evidence reflected payments for methamphetamine, which did not have much influence on the Sentencing Court's determination of Crum's role in the conspiracy. Hostler also points out that he challenged the Sentencing Court's findings on appeal. As to Crum's

6

arguments regarding the documents he wanted, Hostler testified that he showed many of those documents to Crum and discussed them with Crum during their multiple discussions. Hostler did not obtain copies of some documents—such as, the transcript of a co-defendant's detention hearing—because he did not find them to be germane to his defense of Crum. Hostler denied misrepresenting or omitting facts on appeal, stating that he presented all three key issues to the Fourth Circuit. (ECF No. 354).

On March 6, 2020, the United States filed its response to Crum's motion. (ECF No. 355). The United States disputes Crum's claim that the Sentencing Court erred in the way it handled Crum's request for substitute counsel, noting that the Sentencing Court asked Hostler in writing to address the issues with Crum, and copied Crum on the letter. (*Id*. at 8). Consequently, Crum was aware of the steps taken by the Court to address his concerns, and Crum made no further mention of dissatisfaction. To the contrary, Crum confirmed at the plea hearing that he was satisfied with Hostler's defense. The United States also refutes Crum's allegations of ineffective assistance of counsel, emphasizing the affidavit supplied by Hostler and arguing that Crum had failed to establish that Hostler's performance was deficient. The United States argues that Crum made several statements at the plea hearing, which directly contradict his current expressions of dissatisfaction with Hostler, and contends that Crum clearly was not prejudiced by Hostler's defense given that Crum received a substantial downward variance from the USSG sentence range. (*Id*.).

Crum replied to the United States' response, clarifying his claim of a "structural defect" on the part of the Sentencing Court. ((ECF No. 366). Citing to the Fourth Circuit's decision in *United States v. Blackledge,* 751 F.3d 188 (4th Cir. 2014), Crum argues that the Sentencing Court was required to make a formal inquiry into his request for new

counsel, which it failed to do. Accordingly, Crum asserts that he is entitled to have his sentence reversed and the matter reopened for a new sentencing hearing with new counsel.

## II.    <u>**Standard of Review**</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be

disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

### III.    <u>Discussion</u>

As indicated, Crum's petition is based on an alleged "structural defect" in the proceedings resulting from the Sentencing Court's failure to investigate Crum's motion for substitute counsel, and on claims of constitutionally deficient performance by his attorney, Carl Hostler. The asserted grounds for relief are examined below.

#### A. The Sentencing Court's Failure to Consider Substitution of Counsel

The record indicates that, in March 2017, Crum sent the Sentencing Court an *ex parte* motion and supporting statement seeking the removal and substitution of Hostler as counsel of record. These documents were submitted to the Sentencing Court approximately two months before Crum changed his plea to guilty. The Sentencing Court forwarded the motion and statement to Hostler with a letter asking him to speak with Crum about the matters raised in the documents. The motion to substitute counsel and the concerns raised by Crum were never mentioned again to the Sentencing Court, by either Crum or Hostler.

On May 2, 2017, Crum appeared before the Sentencing Court and entered a guilty plea to the charge in the indictment. (ECF No. 284). Of note, in his reply to the United States' response to the § 2255 motion, Crum makes perfectly clear that he is ***not*** attacking the validity of his guilty plea. (ECF No. 366 at 4-7). To the contrary, in fact, Crum expressly agrees with the United States that the Sentencing Court "thoroughly engaged defendant [Crum] in a proper Rule 11 plea colloquy to determine that Crum was voluntarily and knowingly entering a guilty plea and that Crum was satisfied with Counsel." (*Id.* at 6). Crum "concedes that his exchange with the Court shows that his

9

guilty plea was knowingly and intelligently entered, without threats or coercion, and thus, Petitioner was satisfied with Mr. Hostler's time spent representing him in regard to negotiating Petitioner's plea deal." (*Id.*) Crum adds that he "is pleased with his guilty plea," was "pleased with the Court's Rule 11 colloquy," and that his argument in support of this ground for relief "has nothing to do with his Rule 11 plea hearing" or his guilty plea. (Id. at 5-6). In view of these admissions by Crum, his first ground for relief must fail.

"It is the general rule that when a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea, and thus has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea." *United States v. Lozano*, 962 F.3d 773, 778 (4th Cir. 2020) (quoting *United States v. Fitzgerald*, 820 F.3d 107, 110 (4th Cir. 2016) (cleaned up)). "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Consequently, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged ... [h]e may only attack the voluntary and intelligent character of the guilty plea." *Id.* One exception to this general rule is that "where the claim implicates 'the very power of the State' to prosecute the defendant, a guilty plea cannot by itself bar it." *Class v. United States,* 138 S. Ct. 798, 800-01 (2018) (quoting *Blackledge v. Perry,* 417 U.S. 21, 30 (1974)).

Crum does not challenge the government's power to initiate proceedings against him, nor does he attack the validity of his guilty plea. Indeed, Crum acknowledges that his plea was knowing and intelligent, entered without threat or coercion, and of his own volition. He explicitly confirms that this ground for relief does not in any way involve

the integrity of the plea or the propriety of the plea colloquy, and he expresses satisfaction with Hostler's representation as it relates to the guilty plea. Therefore, when Crum entered his voluntary and intelligent guilty plea, he waived the alleged error by the Sentencing Court, which predated the guilty plea by two months. *Lozano*, 962 F.3d at 779; *see also United States v. Stevens,* 326 F. App'x 970 (8th Cir. 2009) (holding that the defendant waived his right to challenge the denial of his pre-plea motions for substitute counsel).

Crum argues that the Court should apply the standard of review set forth in *United States v. Blackledge,* 751 F.3d 188 (4th Cir. 2014). However, *Blackledge* simply does not apply to the facts of this case. In *Blackledge,* the defendant was civilly committed as a sexually dangerous person after a commitment hearing before the court. On appeal, the defendant argued that the district court failed to properly address motions to withdraw that had been filed by the defendant's counsel after counsel's relationship with the defendant became irretrievably broken. Unlike Crum, the defendant in *Blackledge* did not enter a guilty plea, nor concede that he was a sexually dangerous person. Instead, he hotly disputed that he qualified for civil commitment. The defendant appealed the district court's commitment order on the ground that forcing defense counsel to represent him at the commitment hearing, after learning of the extreme difficulties between counsel and the defendant, effectively denied the defendant his constitutional right to effective assistance of counsel. The Fourth Circuit considered the defendant's claim, first applying a three-pronged test set forth to *United States v. Gallop,* 838 F.2d 105, 108 (4th Cir. 1988) to determine if the district court had abused its discretion in denying counsel's motions to withdraw. The Fourth Circuit noted that both the defendant and his counsel advised the Court that they had substantial conflicts,

stating "[w]hile motions to substitute counsel often arise at the defendant's urging, when the attorney also seeks to withdraw, the court must thoroughly inquire into the factual basis of any conflicts asserted by counsel." *Id.* at 194. Upon finding that the court abused its discretion by not making this inquiry, the Fourth Circuit applied a harmless error review to ascertain if the defendant was prejudiced.

Neither the three-pronged test applied in *Blackledge,* nor the harmless error standard is relevant to this case in light of Crum's knowing and intelligent guilty plea. Crum does not seek to set aside his plea, and he readily admits that he received effective assistance of counsel in relation to the decision to plead guilty. In order to successfully state a "structural defect," Crum must show that the Sentencing Court's failure to investigate his complaints and/or substitute Hostler deprived Crum of the basic protections guaranteed by the Fifth and Sixth Amendments; thus, affecting the "framework within which ... a guilty plea is negotiated." *United States v. Smith,* 640 F.3d 580, 592 (4th Cir. 2011). The parties here agree that Crum's guilty plea was valid. As such, Crum was not denied any constitutional right with respect to his plea, and the act of entering a voluntary and intelligent guilty plea precludes him from asserting a claim based on nonjurisdictional defects that preceded the guilty plea. In sum, because the alleged error by the Sentencing Court predated the guilty plea and did not affect its voluntary and intelligent nature, Crum's claim was waived by entry of his plea. *Id. (*citing *United States v. Moussaoui,* 591 F.3d 263, 280 (4th Cir. 2010)).

Crum cites to three Ninth Circuit cases in support of his claim: *Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970); *United States v. Torres-Rodriguez,* 930 F.2d 1375 (9th Cir. 1991); and *Bland v. California Dep't of Corrections,* 20 F.3d 1469 (9th Cir. 1994). These cases are not persuasive for two reasons. First, decisions by the Ninth Circuit

Court of Appeals are not controlling in the Fourth Circuit. Second, the cases do not contradict the general rule set forth in the *Lozano* decision. As was the case with *Blackledge*, the decisions cited by Crum are inapposite here, because in all three cases, the defendants were convicted by a jury, rather than by entry of a guilty plea. As already explained, a valid guilty plea significantly alters the landscape with respect to the viability of claims on appeal and collateral challenge.

Therefore, as the undersigned **FINDS** that Crum waived his right to raise the alleged error of the Sentencing Court in relation to his motion to substitute counsel, this ground for relief is without merit.

### B.  Ineffective Assistance of Counsel

Crum asserts that certain acts or omissions by Hostler constituted violations of the Sixth Amendment to the United States Constitution, which guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can establish that his lawyer was ineffective by satisfying the elements of a two-pronged test. *Id.* at 687. The defendant carries the burden to prove both prongs of the *Strickland* test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994). When a defendant has pled guilty, the court considers whether the plea was constitutionally valid despite the alleged ineffective assistance. The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket*, 208 F.3d at 190.

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id* at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). A counsel's trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to ***incompetence*** under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011) (emphasis added).

Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness

bears on the voluntariness of the guilty plea."). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance in the context of a guilty plea, a "petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). In order to demonstrate prejudice, therefore, a petitioner "must convince [the court] that the decision to go to trial 'would have been rational under the circumstances.'" *Dyess*, 730 F.3d at 361 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). To establish prejudice in the context of sentencing, the petitioner must establish a reasonable probability that her sentence would have been more lenient had counsel's performance not been deficient. *Royal v. Taylor,* 188 F.3d 239, 249 (4th Cir. 1999).

### 1. Crum's Complaints to the District Court

Although not raised as a separate ground for relief in his § 2255 motion, Crum

did provide the Sentencing Court with a list a grievances against Hostler as a part of Crum's request for new counsel. Specifically, Crum complained that Hostler did not supply all of the documents that Crum wanted to review in order to decide how to proceed with his defense; including, the plea agreements of co-defendants, the transcript of a detention hearing pertinent to another defendant, and photographs of the physical evidence to be used against Crum. (ECF No. 346 at 17-18). Crum further criticized Hostler for being slow to respond to Crum's requests, for failing to assist him with gaining access to the law library at the detention center, and for not pursuing a joint defense agreement with his fiancée, co-defendant Diana Gamboa. (Id. at 18). Hostler responds to each of Crum's criticisms in the affidavit that Hostler filed, setting out the steps he took to keep Crum updated on the major events of the case. (ECF No. 354).

The Court need not examine Crum's many criticisms in detail, because he does not claim that any of the alleged shortcomings affected the validity of his guilty plea. As discussed above, Crum reaffirms his satisfaction with the guilty plea and asks only for resentencing. Nonjurisdictional defects—even alleged constitutional violations—that do not alter the knowing and voluntary nature of the defendant's guilty plea are waived when the plea is entered. Therefore, the undersigned **FINDS** that these claims by Crum fail to state a basis for the relief requested in this § 2255 motion.

### 2. Failure to Obtain Independent Chemical Analysis of Drugs

Crum argues that Hostler's "breaking his promise to seek and obtain an independent chemical analysis to be performed on the subject controlled substance" was ineffective assistance, because "drug purity was a pivotal determinative factor in determining Crum's sentence." (ECF No. 350 at 7). Hostler states in response that he chose to forgo the chemical analysis for three reasons. (ECF No. 354 at 2). First, the

Sentencing Court had already determined the purity of the methamphetamine at issue based upon information received during hearings involving the co-defendants. Second, and more importantly, the amount of methamphetamine at issue was so large that the volume of drug negated any benefit that could be gained from demonstrating that some of the methamphetamine was of negligible purity. (ECF No. 354 at 2). Lastly, Hostler notes, most of the relevant conduct against Crum was "historic" or "ghost" drug, which was described by a key witness as having a very high purity and clarity. (*Id.*).

In the PSR, the Probation Officer reviewed the witness statements and grand jury testimony of Crum's co-conspirators and customers, ultimately concluding that 24.666714 kilograms of methamphetamine could be attributed to Crum for USSG calculation purposes. The PSR assumed that the methamphetamine was "ice," which resulted in a USSG base offense level of 38.

At Crum's sentencing, Hostler objected to the amount of drug attributed to Crum, as well as the purity of the drug. (ECF No. 285 at 30-33). The United States responded by pointing out that even if the Court accepted Hostler's suggestion that the methamphetamine was only 70 percent pure, 15 pounds of drug calculated at 70 percent purity still amounted to more than 4.5 kilograms, the threshold that was needed to correspond to a base offense level of 38. (*Id.* at 34). Consequently, the purity of the drug was less important in reaching the sentencing threshold, because of the amount of drug at issue.

Joseph Scott Cooper, a co-defendant of Crum, testified at the sentencing hearing that Crum supplied Cooper with methamphetamine to traffic. (*Id.* at 50-52). Cooper stated that he first obtained methamphetamine from Crum in 2013. (*Id.* at 53). Over time, the amount of methamphetamine that Cooper received from Crum in one

17

transaction increased from a few ounces to four pounds or more. (*Id.* at 55). Cooper estimated that in an 18-month period, he purchased almost 50 pounds of methamphetamine from Crum. (*Id.* at 56). Out of that 50 pounds, a "couple of pounds" were fake, but the remainder looked "like ice." (ECF No. 285 at 58-59, 62).

Considering the overwhelming evidence detailed in the PSR and the testimony of Cooper, the Sentencing Court determined that Crum was responsible for 45 pounds of methamphetamine, which placed his relevant conduct well above the 4.5 kilogram threshold. As such, Crum received a base offense level of 38. (*Id.* at 78). The Court added that, even using the lowest amount of drug argued by Crum, the base offense level would still be 38. (*Id.*). Thus, as Hostler testifies, an independent chemical analysis would not have changed the USSG calculation. "A criminal defense attorney is obligated to follow his client's wishes only with regard to the fundamental issues that must be personally decided by the client. ...  If the decision is a tactical one left to the sound judgment of counsel, the decision must be just that—left to the judgment of counsel. Counsel need not consult with the client about the matter or obtain the client's consent." *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (citation omitted).

Accordingly, the undersigned **FINDS** that Crum fails to demonstrate a reasonable probability that had Hostler obtained an independent analysis, Crum's sentence would have been more lenient.

### 3. Hostler was Deficient By Agreeing to an Exaggerated Drug Weight and Purity

In a related argument, Crum criticizes Hostler for conceding at the sentencing hearing that Crum was responsible for 15 pounds of methamphetamine, and that at least half of it was 80% pure. (ECF No. 350 at 9-10). This criticism is without merit. In both

the objections to the PSR and at sentencing, Hostler offered the Court an alternative to the evidence and argument propounded by the United States that Crum was responsible for at least 48 pounds of exceptionally pure methamphetamine. Given the substantial evidence against Crum, Hostler had little chance of persuading the Court that Crum distributed substantially less methamphetamine than was claimed by the United States. Nevertheless, Hostler was persistent, even in the face of the Government's witness statements and testimony. The Government had interviews of numerous witnesses, who confirmed receiving various amounts of crystal methamphetamine from Crum. In addition, Cooper testified at the sentencing hearing that he had obtained approximately 50 pounds of methamphetamine from Crum between late 2013 and early 2015, with only a couple of the pounds being fake. (ECF No. 276 at 33-34). Using a conservative estimate of the amount of drug that could be attributed to Crum, the Probation Officer determined that Crum had distributed more than 24 kilograms of methamphetamine. (*Id.* at 35). Crum had already admitted to conspiring to distribute methamphetamine, so Hostler's decision to offer an alternative position on the weight and purity of the drug attributable to Crum was a sound strategy designed to reduce Crum's sentence exposure. Thus, Crum has not carried his burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). It is noteworthy that when Crum was given an opportunity to speak at his sentencing hearing, he volunteered to the Sentencing Court that he started out by selling small amounts of methamphetamine to his friends, and the transactions gradually grew larger culminating in him selling Cooper a "six-pound amount that one time, and then a few times after that." (ECF No. 285 at 105). Thus, according to Crum's own words at the

hearing, one can reasonably conclude that Crum distributed, at a minimum, 18-24 pounds of methamphetamine to Cooper.

Moreover, even if the Court had given Crum the benefit of the doubt and accepted Hostler's argument, it is not reasonably probable that Crum's sentence would have been more lenient. The calculated sentence range under the USSG with a base offense level of 38 was 324-405 months; using Hostler's proffered base offense level of 34, the sentence range would have been 210-262 months of imprisonment. The Sentencing Court sentenced Crum to 240 months of imprisonment. The Sentencing Court imposed this sentence after considering the evidence, the relevant factors, and the arguments of counsel. There is absolutely nothing in the record to suggest that the Sentencing Court would have imposed a lighter sentence. Accordingly, the undersigned **FINDS** that Crum fails to establish to a reasonable probability both prongs of the *Strickland* test.

### 4. Counsel's Failure to Challenge the Government's Late Evidence

Crum contends that Hostler should have challenged as untimely payment evidence provided by the United States a few weeks before sentencing. (ECF No. 350 at 7). Crum alleges that the payment receipts were provided at the time of Crum's plea and the "exaggerated" dollar amounts were relied upon by the Sentencing Court when determining Crum's leadership role under the USSG sentence enhancements. Hostler testifies that he did not attack the payment receipts, because they had little impact on the Court's sentence determinations. (ECF No. 354 at 2). Crum does not provide any record evidence to support his representation that the unchallenged dollar amount reflected in the receipts was key to the sentence imposed.

During the sentencing hearing, Hostler in fact addressed the $170,000 in

payment receipts produced by the United States. (ECF No. 285 at 47-48). Hostler advised the Sentencing Court that Crum challenged the total reflected in the receipts on the basis that some of the receipts documented transactions in which Crum merely moved money from one Pay Pail account to another and did not reflect an influx of new cash. (*Id.*) Consequently, the receipts double-counted payments, resulting in a total of $170,000, which was exaggerated, misleading, and erroneous. Hostler further argued that the payment receipts proved, if anything, that Crum had distributed significantly less methamphetamine than the 50 pounds claimed by Cooper. Hostler's strategy was sound in that he not only attacked the validity of the receipts, but he used them to bolster his argument on drug amount. In any event, as Hostler recounts in his affidavit, the Sentencing Court did not place any particular emphasis on the receipts in reaching a determination regarding Crum's leadership role. Instead, as the Court explained, Crum's leadership role was plain from the evidence, such as the fact that Crum was the primary decision maker as to what to buy, what to sell, and how much to charge for it. He recruited accomplices, such as Cooper, and arranged the transactions with the distributors. Crum instructed that payments be made directly to him, rather than his fiancée, Gamboa, and he exercised control over a number of individuals, who purchased methamphetamine from him. The Court noted that Crum received a larger share of the fruits of the scheme, receiving in cash all of the payments made by Cooper. The Sentencing Court did not need to rely on the receipts, because the testimony alone directed the Court's conclusion.

Therefore, the undersigned **FINDS** that Hostler's performance at the sentencing hearing was not ineffective. To the contrary, Hostler provided Crum with a strategic defense that successfully resulted in a sentence, which was 84 months below the bottom

of the applicable USSG sentence range. As an example of Hostler's effectiveness, the undersigned points to Hostler's resistance to the Government's request for a firearms enhancement. (ECF No. 285 at 76-77, 80-81). Had Hostler not succeeded on his objection, Crum could have faced a sentence range of life in prison.

### 5. Hostler's Alleged Misrepresentations on Appeal

Crum takes issue with some statements in Hostler's appellate brief and indicates that Hostler failed to give Crum an opportunity to review the brief for content and accuracy before filing it. (ECF No. 350 at 13). Crum adds that when he did receive the brief, he asked Hostler to file a motion with the Fourth Circuit to clear up the errors, but Hostler failed to do so. Relying on *Hendricks v. Lock,* 238 F.3d 985 (8th Cir. 2001), Crum contends that Hostler's poor appellate brief entitles Crum to resentencing, because prejudice is presumed.

In response, Hostler testifies that he raised three key issues on appeal, including that (1) the prime sentencing witness against Crum was not reliable; (2) the leadership enhancement was erroneous; and (3) there was a lack of evidence to establish that the methamphetamine distributed by Crum originated in Mexico. (ECF No. 354 at 3). Hostler further asserts that Crum does not specifically articulate the alleged factual errors that he claims were made in the appellate brief, and Hostler disagrees that statements in the brief were erroneous. Hostler is correct that Crum does not provide much detail in support of this ground for relief, but he does describe one alleged error relating to his communications with co-defendant Cooper about importing drugs from Mexico. Crum claims that Hostler misrepresented the communication, which did not occur as testified by Cooper.

In its opinion, the Fourth Circuit confirms that, in addition to the briefs, it "thoroughly reviewed the record" from the District Court. Having examined the evidence, the Fourth Circuit agreed with the Sentencing Court's factual findings. *United States v. Crum,* 740 F. App'x 261, 263 (4th Cir. 2018). At the time of sentencing, Hostler argued that the only evidence the United States offered regarding the source of the methamphetamine was Cooper's testimony, and Cooper was not reliable. Hostler explained to the Sentencing Court that Crum did not know the origin of the methamphetamine he distributed, but could confirm that he purchased all of it in the United States. The Sentencing Court, in response, emphasized that Crum's purported lack of knowledge regarding the methamphetamine's origin was not itself determinative of whether he would receive a two-level enhancement for distributing imported methamphetamine. (ECF No. 285 at 78-79). The United States argued that, because other members of the conspiracy stated that they knew that the methamphetamine came from Mexico, and there was evidence that Crum also knew, the United States had met its burden to justify a two-level enhancement. The Sentencing Court agreed, and the Fourth Circuit affirmed the Sentencing Court's assessment.

The investigation into Crum's drug trafficking organization uncovered evidence that demonstrated a Mexican source of the methamphetamine distributed by the organization. For example, Morgan Light, who was Cooper's significant other, stated that the methamphetamine was obtained through a Mexican relative of Ms. Gamboa. The relative, Jose, was allegedly connected to a drug cartel in Mexico. (ECF No. 276 at 23). Furthermore, a customer of both Cooper and Crum testified before the grand jury that Crum and Gamboa mentioned that their source of methamphetamine was a Mexican drug cartel. (*Id.* at 35). Lastly, Cooper confirmed, both before the grand jury

23

and at Crum's sentencing, that Crum's methamphetamine was imported from Mexico. Considering this evidence, the Government met its burden of proving by a preponderance of the evidence that the methamphetamine Crum distributed was from Mexico. Consequently, regardless of whether or not Crum approved of Hostler's appellate brief, the Fourth Circuit reviewed and relied upon the evidence presented in the Sentencing Court.

Crum cites only to *Hendricks v. Lock,* an Eighth Circuit case, in support of his position. His reliance on *Hendricks* is misplaced, however, not only because the case has no precedential weight in this circuit, but also because the case is factually distinguishable from the instant action. In *Hendricks,* the Eighth Circuit Court of Appeals considered whether a district court committed error by not requiring a defendant to establish both prongs of *Strickland*. The parties in the case had already agreed that the petitioner's appellate counsel was deficient, but they disagreed as to the district court's determination that the petitioner was not required to show prejudice. The district court made this determination after finding that appellate counsel's performance was so deficient that it essentially denied the petitioner the assistance of counsel altogether. *Id.,* 238 F.3d at 987. The Eighth Circuit considered the opinion from the appellate court that rejected the petitioner's appeal, observing the court's statement that a review of the appeal on the merits was impossible given the "completely undeveloped" arguments, which provided "nothing for meaningful review." *Id.* at 986. The Eighth Circuit concluded that, because the petitioner was denied a decision on the merits in his first appeal of right, and this denial was due entirely to his lawyer's incompetence, prejudice would be presumed.

In Crum's case, Hostler raised three potentially persuasive grounds on appeal and

briefed them. The Fourth Circuit clearly understood the arguments provided by Hostler, because the Fourth Circuit considered each ground for relief on its merits. As such, Crum was not denied a decision on the merits. The fact that Hostler was not able to persuade the Fourth Circuit to adopt his positions does not, on its own, establish ineffective assistance of counsel.

Accordingly, the undersigned **FINDS** that Crum has failed to meet his burden to establish both prongs of the *Strickland* test on this ground for relief.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 346), be **DENIED,** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: October 2, 2020

Cheryl A. Eifert
United States Magistrate Judge